# Illinois Official Reports

## Appellate Court

---

**_People v. Kampas_, 2020 IL App (3d) 170464**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARCY L. KAMPAS, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0464 |
| Rule 23 order filed<br>Motion to<br>published allowed<br>Opinion filed | February 26, 2020<br><br>March 19, 2020<br>March 19, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 17-CF-72; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd and Peter A. Carusona, of State Appellate Defender's Office, of Ottawa (James M. Durkee, of Malmquist Geiger & Durkee LLC, of Morris, of counsel), for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                           JUSTICE CARTER delivered the judgment of the court, with opinion. Justices Holdridge and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1        Defendant, Darcy L. Kampas, appeals from her convictions for aggravated domestic battery and domestic battery. Defendant argues that (1) the court erred in admitting evidence of the 911 telephone recording made by the victim, A.M., and (2) counsel provided ineffective assistance where he failed to object to the admission of the victim's written statement to the police as hearsay. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3        The State charged defendant, by indictment, with one count each of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) and domestic battery (*id.* § 12-3.2(a)(1)). The cause proceeded to a bench trial.

¶ 4        At trial, 17-year-old A.M. testified that she was defendant's daughter, and she lived with defendant and her two younger brothers in an apartment. On the evening of February 8, 2017, A.M. fell asleep on a couch. Around 3:30 a.m., defendant woke A.M. and asked her to move to another couch. A.M. "went after" defendant and "started swinging." Defendant restrained A.M., until A.M. broke free and ran out of the apartment and called her friend, J.K., for a ride. A.M. told J.K. that defendant became angry when she would not move from the couch and punched A.M. After speaking with J.K., A.M. called the police.

¶ 5        A.M. told the police dispatcher that defendant, who had been drinking all day, woke A.M., and told her to leave the apartment. Defendant "started flipping out because [A.M.] wouldn't wake up and move" and then argued with A.M. for 10 minutes. At that point, A.M. stopped arguing and asked defendant to give her a few minutes to get up. Defendant grabbed A.M. by the throat, threw her off the couch, and started hitting her. A.M. attempted to defend herself. Defendant hit A.M. in the face, causing A.M. to suffer a bloody nose and swollen lip. A.M. "literally spit out a chunk of [her] lip." While defendant had A.M. in a chokehold, A.M. bit defendant. The State introduced the recording of A.M.'s 911 call "under Rule 801 as a prior inconsistent statement which [A.M.] acknowledged."

¶ 6        During the three-minute recording, A.M. can be heard telling the dispatcher that she was sleeping on a couch located in the apartment when defendant woke her up. A.M. said that defendant had been drinking all day and told A.M. to "get out." When A.M. would not move from the couch, defendant argued with A.M. When A.M. stopped arguing and asked for time to get up and leave, defendant grabbed A.M. by the throat and threw her off the couch. Defendant punched A.M. in the face, causing A.M. to suffer a bloody nose and swollen lip. A.M. said that she "spit out a chunk of my lip." Defendant then placed A.M. in a chokehold on the ground.

¶ 7        On cross-examination, A.M. said that she had lied to the dispatcher regarding her explanation of the altercation. According to A.M., defendant tried to wake her because defendant wanted to sleep on the couch where A.M. was located. A.M. responded with

- 2 -

aggression, and she injured her lip when defendant restrained her arms. A.M. did not bite a piece out of her lip. A.M. also said that her comment about defendant's drinking was not true.

¶ 8        A.M. also testified that, after the incident, she told her neighbor, Joshua Tucker, that defendant had woken her up so that she would go to her room to sleep. A.M. became angry and attacked defendant. A.M. told her aunt, Holly Kampas, that she hit defendant after she awoke. Defendant then attempted to restrain A.M. On February 18, 2017, A.M. told Erin Haley that, at the time of the incident, she was mad at defendant. A.M. told Haley that the incident was "blown of out of proportion" and what she said on the night of the incident was not how the events occurred.

¶ 9        Pekin Police Officer Nicholas Taylor testified that he spoke with A.M. on February 9, 2017, at 3:55 a.m. A.M. appeared upset and had blood on her face, mouth, and neck. Taylor photographed A.M.'s injuries and asked her to make a written statement. Taylor identified State's exhibit No. 7 as A.M.'s written statement. Taylor said that the exhibit was an accurate copy of the statement. Defense counsel voiced no objection to the admission of the statement but objected to Taylor reading it on the grounds that Taylor had not made the statement. The court admitted the statement into evidence and permitted Taylor to read it to the jury.

¶ 10        In the statement, A.M. said that she was sleeping in the living room when defendant, who had been drinking all day, told her that she had to leave. When A.M. did not leave, defendant became enraged. Defendant grabbed A.M. by the neck and threw her off the couch. When A.M. got up, defendant hit her multiple times, resulting in a bloody nose and swollen lip. While A.M. was lying on the ground "dripping blood," defendant placed A.M. in a chokehold. A.M. bit defendant and ran out of the apartment.

¶ 11        After speaking with A.M., Taylor met defendant at her apartment. Taylor noticed that defendant had a strong odor of an alcoholic beverage emanating from her and her speech was slurred. Defendant showed Taylor a bite mark on her right ring finger. Defendant had no other visible injuries.

¶ 12        Following Taylor's testimony, the State recalled A.M. A.M. said that she sent a text message to J.K. on the morning of the trial. In that message, A.M. said that she did not think defendant had punched her but thought that defendant had choked her. J.K. responded to the message "it might be too late to change now." A.M. said that before the altercation, she had wanted to move out of defendant's apartment and live with J.K. A.M. and J.K. were still friends, but they did not speak as often as they used to. By the time of the trial, A.M. wanted to resume living with defendant and restated that her prior statements were all false.

¶ 13        J.K. testified that she and A.M. had been friends for approximately nine years. On February 9, 2017, J.K. received a call from A.M. sometime after 3 a.m. A.M. was crying and asked J.K. to come get her. When J.K. picked A.M. up, she noticed that A.M.'s lips were puffy, A.M. had red marks on her face, and A.M. had blood on her sweatshirt. A.M. told J.K. that she was sleeping on the couch when defendant told her to leave. As A.M. got up, defendant punched her in the face. A.M. fell to the floor, and defendant began to choke her. A.M. told J.K. that she had a bloody nose and blood in her mouth. After speaking to J.K., A.M. called the police.

¶ 14        At the conclusion of J.K.'s testimony, the State rested. The defense called Tucker to testify. Tucker said that he was defendant's neighbor. Early on the morning of February 9, 2017, Tucker heard a commotion emanating from defendant's apartment. Tucker went to the apartment and saw defendant tell A.M. to calm down and attempt to restrain A.M. Both defendant and A.M. were wrestling on the floor. While wrestling defendant, A.M. struck her

lip on the ground. Tucker asked defendant and A.M. to separate, and he brought A.M. to his apartment to calm her down. A.M. told Tucker that she was asleep on the couch when defendant woke her up and told her to go to her room. A.M. became upset with defendant and "kind of lost it." After A.M. left, Tucker spoke with defendant. Tucker said defendant was not intoxicated.

¶ 15     Haley testified that on the night of the incident, defendant called her to take custody of her two minor sons. When Haley arrived at defendant's apartment, defendant was in police custody and appeared upset. Defendant did not seem intoxicated. Several days after the incident, A.M. sent Haley a message that said A.M. had made a mistake and that she did not tell the truth on the night of the altercation. At the time of the altercation, A.M. was upset with defendant and lied to the police about the details of the fight.

¶ 16     Holly Kampas testified that defendant is her sister. On the afternoon that followed the altercation, A.M. told Holly that she struck defendant and she was "kind of proud of it." According to A.M., defendant then "took her and put her on the ground and held her and told her to calm down."

¶ 17     The jury found defendant guilty of aggravated domestic battery and domestic battery. The court sentenced defendant to 24 months of probation and ordered defendant to serve nine days in jail. Defendant appeals.

¶ 18                                         II. ANALYSIS
¶ 19                             A. Admission of the 911 recording
¶ 20     Defendant argues that the court erred in admitting the recording of A.M.'s 911 call as a prior inconsistent statement because the call was cumulative of A.M.'s testimony acknowledging the statements recorded during the call. The State argues that defendant forfeited review of this issue because she did not raise it in her posttrial motion, she does not argue for plain error review, and the issue is not reversible plain error. We agree that defendant forfeited this issue and did not argue for plain error review.

¶ 21     To preserve an issue for appellate review, a defendant must both object to the perceived error during the proceedings in the circuit court and raise the error in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, defendant failed to raise this evidentiary issue in her posttrial motion. Therefore, we may only review this issue for plain error. The plain error rule provides "a narrow and limited exception" to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To obtain relief under this rule, a defendant must show that a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs, defendant bears the burden of persuasion. *Hillier*, 237 Ill. 2d at 545. "If the defendant fails to meet his burden, the procedural default will be honored." *Id.*

¶ 22     In her appellant brief, defendant made no request for plain error review or argument for reversal of this forfeited issue under either of the prongs of the plain error rule. Nor did defendant file a reply brief raising a plain error argument after the State argued in its appellee's brief that defendant forfeited this issue. As defendant made no plain error argument, she

"obviously cannot meet [her] burden of persuasion." *Id.* (citing *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000)). Therefore, defendant has forfeited plain error review of the underlying evidentiary issue.

¶ 23                          B. Ineffective Assistance of Counsel

¶ 24    Defendant argues that she received ineffective assistance of counsel where counsel did not object to the admission of A.M.'s written statement to the police as hearsay. Further, this statement was not admissible as a prior inconsistent statement because the State failed to meet the foundational requirement that A.M. be confronted with the statement and acknowledge making it. We find counsel's performance was not deficient because A.M.'s written statement was properly admitted into evidence under Illinois Rule of Evidence 801(eff. Oct. 15, 2015).

¶ 25    To prevail on a claim of ineffective assistance of counsel, defendant must satisfy both prongs of the test set forth by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced defendant. *Id.*; see also *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

¶ 26    Defendant argues that her attorney provided deficient performance by failing to object to the State's introduction of A.M.'s prior inconsistent written statement to the police because the statement was hearsay and lacked a proper foundation. This issue implicates Illinois Rule of Evidence 801(d) (eff. Oct. 15, 2015), which defines certain statements as "not hearsay" and sets forth the foundational requirements for introducing these "not hearsay" prior inconsistent statements. Rule 801(d) states:

"(d) Statements Which Are Not Hearsay. A statement is not hearsay if

(1) Prior Statement by Witness. In a criminal case, the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

(A) inconsistent with the declarant's testimony at the trial or hearing, and—
***

(2) narrates, describes, or explains an event or condition of which the declarant had personal knowledge, and

(a) the statement is proved to have been written or signed by the declarant[.] Ill. R. Evid. 801(d)(1)(A)(2)(a) (eff. Oct. 15, 2015).

¶ 27    A.M.'s prior written statement to the police complied with each of the requirements of Rule 801(d)(1)(A)(2)(a) and therefore is "not hearsay" and was properly introduced as substantive evidence. Specifically, A.M. testified at trial and was subject to cross-examination both before the statement was introduced and immediately after Taylor's testimony when she was recalled. The written statement was inconsistent with A.M.'s testimony that she was the initial aggressor. The written statement was based on A.M.'s personal observations of and participation in the altercation with defendant. Taylor's testimony proved that A.M. wrote and signed the written statement introduced into evidence by the State.

¶ 28    We reject defendant's argument—citing *People v. Brothers*, 2015 IL App (4th) 130644, ¶ 89, and *People v. Hallbeck*, 227 Ill. App. 3d 59, 62 (1992)—that "[t]o be admissible as a prior inconsistent statement it is foundational that the witness be confronted with specific

statements she allegedly made to the officer and acknowledge those statements." Defendant's argument derives from Illinois Rule of Evidence 613(b) (eff. Sept. 17, 2019), which requires that a witness be "afforded an opportunity to explain or deny" a prior inconsistent statement when the statement is used for impeachment purposes. This provision is mirrored in Illinois Rule of Evidence 801(d)(1)(A)(2)(b) (eff. Oct. 15, 2015), which requires that the declarant acknowledge "under oath the making of the statement." However, the present issue implicates Rule 801(d)(1)(A)(2)(a) because the State sought admission of a *written* prior inconsistent statement. Ill. R. Evid. 801(d)(1)(A)(2)(a) (eff. Oct. 15, 2015). In place of the declarant's acknowledgement, subpart (a) requires that "the statement is proved to have been written or signed by the declarant." *Id.* The declarant is still afforded an opportunity to explain the inconsistency, as Illinois Rule of Evidence 801(d)(1) (eff. Oct. 15, 2015) requires that she be "subject to cross-examination concerning the statement."

¶ 29    Finally, we note that the cases that defendant relies on do not address the application of Rule 801(d)(1)(A)(2)(a) and instead analyze subpart (b). See *Brothers*, 2015 IL App (4th) 130644, ¶ 89; *Hallbeck*, 227 Ill. App. 3d at 62. Therefore, they do not direct our analysis of this issue.

¶ 30    We conclude that counsel did not provide deficient performance because A.M.'s written statement to the police was not hearsay and was properly introduced as substantive evidence.

¶ 31                                      III. CONCLUSION

¶ 32    The judgment of the circuit court of Tazewell County is affirmed.

¶ 33    Affirmed.